UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


PAUL JONES,
        Plaintiff,


        v.                                    CIVIL ACTION NO. 14-10218-GAO


REVENUE ASSISTANCE
CORPORATION, et al.,
        Defendants.



REPORT AND RECOMMENDATION ON
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
(#201) AND REVENUE ASSISTANCE'S
<u>CROSS-MOTION FOR SUMMARY JUDGMENT (#235)</u>.



KELLEY, U.S.M.J.

I. <u>INTRODUCTION</u>.

        Pro se plaintiff Paul Jones filed his original complaint against several defendants on January

25, 2014, alleging a variety of illegal debt collection practices. (#1.) At this point Revenue

Assistance Corporation d/b/a SalesLoft[1] ("Revenue Assistance") is the sole defendant remaining in

the case. Further, following the Court's decision (#232) on Revenue Assistance's motion for

judgment on the pleadings, only Count II of the first amended complaint, a claim for violation of the

---

[1]

        This defendant was improperly named as Revenue Group in the first amended complaint. (#199 at
1.)

Telephone Consumer Protection Act ("TCPA"), remains extant.  The parties have filed cross-motions for summary judgment which have been briefed.[2] (##201, 202, 222, 223, 235, 236, 237.)

In Count II, Plaintiff alleges violation of the following provision of the TCPA:

> It shall be unlawful for any person within the United States . . . to make any call . . . using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States.

47 U.S.C. 227(b)(1)(A)(iii). "The elements of this type of TCPA claim are: (1) the defendant called a cellular telephone service or a service for which the called party is charged on a per call basis; (2) using an [Automated Telephone Dialing System, ("ATDS")]; and (3) without the recipient's prior consent." *Karle v. Southwest Credit Systems*, 2015 WL 5025449, at *5 (D. Mass. June 22, 2015), *Report and Recommendation adopted by* 2015 WL 5031966 (D. Mass. Aug. 25, 2015); *Jones v. FMA Alliance Ltd.*, 978 F. Supp.2d 84, 86 (D. Mass. 2013).

Defendant contends that Jones cannot establish an element of his claim, specifically, Plaintiff cannot show that he was charged on a per call basis for the two telephone calls placed to him by Revenue Assistance.  In addition, Revenue Assistance argues that Plaintiff lacks standing to assert a TCPA claim.  Because the undisputed facts support Revenue Assistance's position on the charge per call element, and the question of standing is jurisdictional, the discussion herein shall be limited to those two issues.

---

[2]

Revenue Assistance's cross-motion for summary judgment (#235) was filed on August 8, 2016. Under Local Rule 56.1, opposition to this motion was to be filed "within 21 days after the motion is served," i.e., on or before the close of business on August 29, 2016.  As of this date, no opposition has been filed.

## II. <u>THE RELEVANT FACTS</u>.

Jones avers that he subscribed to the telephone number, 978-425-6336, and has had it registered on the Federal Trade Commission Do Not Call List since on or about 2003. (#201 ¶ 2; #201-1, Exh. 8 ¶ 3.)  Defendant does not dispute that Plaintiff subscribed to the telephone number, but does dispute the evidence proffered to show that the number is registered on the Do Not Call list. (#237 ¶ 2.)  Plaintiff claims that he owns the telephone number (#201-1, Exh. 8 ¶ 3); Revenue Assistance disputes that ownership, arguing the telephone number is associated with an entity called Eccentric Entertainment, an escort service. (#237 ¶ 3[3].)  Jones asserts that he never gave permission to Revenue Assistance to call his telephone number (#201 ¶ 5), while Defendant contends that the number is associated with an escort service and so is not a residential line. (#237 ¶ 5.)

Jones seeks to recover statutory damages  for two telephone calls he received from Revenue Assistance. (#237 ¶ 17.)  Plaintiff has testified at his deposition as follows:

> Q: In paragraph 60 [of the first amended complaint] you identify two instances on which calls were placed to a number ending in 6336; is that correct?
>
> A: Yes.
>
> Q: And those calls were both on November 6, 2013, one on which you allege was placed at 9:51 a.m. and one which you allege was placed at 9:28 a.m.; is that correct?
>
> A: That's correct.
>
> Q: You allege that you received these telephone calls from 216-763-2750; is that correct?
>
> A: Yes.

---

[3]

Although nearly illegible, the Eccentric Entertainment Yellow Pages entry submitted by Defendant (#237-1) appears to be dated 2016.

*****

Q: Well, are you seeking recovery in this complaint for any other phone calls other than the ones identified here in paragraph 60 [of the first amended complaint]?

A:  Correct; two phone calls.

Q: Are you seeking recovery in this suit for any other phone calls?

A:  No.

Q: Just these two calls?

A: That's it.

(#237-2, Deposition of Paul Jones at 41: 3-15, 22-24; 42:1-6.)  The two telephone calls at issue were placed by Defendant to Plaintiff's telephone number ending in 6336 on November 6, 2013 at 9:51 a.m. and 1:39 p.m., respectively. (#202 ¶ 6[4]; #237 ¶ 6; #237-2, 69: 6-24, 70: 1.)

Jones purchased the telephone number ending in 6336 several years ago from Verizon. (#237 ¶ 19.)  At his deposition, Plaintiff testified as follows:

Q: Was the 978-425-6336 number a number you purchased from CallSource?

A: No.

A:  I believe I purchased the number years ago, a long time ago from Verizon.

(#237-2, 52: 21-23, 53:1-2.)  Plaintiff's telephone number ending in 6336 is associated with a VoIP service, as Jones testified:

Q: So I'm going to ask you again: Is the 978-425-6336 number a number that's associated with a VoIP Service?

A: Yes.

---

[4]

Plaintiff agreed at his deposition that he made a mistake on the time of one of the calls. (#237-2, 69: 6-24, 70: 1.)

(#237 ¶ 20; #237-2, 47:7-10.)  In 2010, Plaintiff transferred his telephone number ending in 6336 to CallSource:

> Q: So on or about 2010 you transferred over the 6336 number to CallSource?
>
> A: Yes.

(#202 ¶ 2; #237 ¶ 2; #237 ¶ 21; #237-2, 53: 14-16.)  CallSource is a telephone company that Jones employed for his telephone services. (#237 ¶ 22.)  Plaintiff testified to that effect at his deposition:

> Q: It's my understanding that you employed the services of a company called CallSource; is that correct?
>
> A: Yes.
>
> Q: And what services did you retain CallSource for?
>
> A:  Telephone service.
>
> Q:  What sort of telephone services?  In other words - -
>
> A:  They're like a - - they're my telephone company.
>
> Q:  They're your telephone company?
>
> A: Yes.

(#237-2, 51: 12-24.)

On April 10, 2013, Plaintiff executed a new contract with CallSource which sets forth the terms of his service. (#237 ¶ 23.)  The following testimony was given by Jones at his deposition:

> Q:  What I've given as Exhibit 4 is an open subscriber agreement with CallSource that was signed on or about April 10, 2013; is that correct?
>
> A:  Correct.
>
> Q:  Do you recognize this subscriber agreement?
>
> A: Yes.  This is a contract, a new contract that I had after - - that I opened in

4/10/2013 after the Paugatti contract was scrapped because the company didn't exist anymore.  So I opened a new contract under my name with them.

(#237-2, 59: 5-16; #237-3.)  According to the terms of the contract, Plaintiff was charged a monthly

fee of $499 in exchange for use of 1000 minutes of telephone time. (#237-3 at 1; #237-4 at 1.)

Jones testified regarding the terms of the contract:

> Q:  And in 2(e) [of the CallSource contract] it says, "Subscriber shall pay CallSource $499 dollars per month for up to unlimited toll-free numbers routed to a single location."  So, in other words, you were charged a monthly fee of $499; correct?
>
> A:  Correct.
>
> *****
>
> Q:  Right.  I'm asking you: The 1,000 minutes is included in the monthly rate of $499 per month?
>
> A:  Right.

(#237-2, 60: 2-7, 63: 2-6.)  The contract further provided that Jones would only be charged .099

cents per minute for each additional minute above the 1000 minute monthly allotment. (#237 ¶ 25;

#237-3 at 1; #237-4 at 1.)  Plaintiff testified:

> Q:  And it looks like your most recent contract is for 1,000 minutes of traffic for unlimited tracking numbers at $499 per month and additional minutes are to be charged at .099 per minute; correct?
>
> A: Correct.
>
> Q: What does traffic mean?  It says 1,000 minutes of traffic.  What does that mean?
>
> A: That means any - - once - - if I have 1,000 minutes per month, the first 1,000 minutes is (sic) free.  Any phone calls that come in, they count if it's a minute or if I stay on the phone for five minutes.  After 1,000 minutes, I'm getting charged 0.099 scents per minute which is the final contract I have with them.

(#237-2, 64: 20-24, 65: 1-11.[5])  In a letter dated June 3, 2014, the CSO of CallSource described

Plaintiff's relevant contract in the same way: "Mr. Jones' current contract with CallSource, signed

April 10, 2013, provides up to 1,000 minutes of traffic for unlimited tracking numbers at $499.00

per month.  Additional minutes are to be charged at $0.099 per minute." (#237 ¶ 26; #237-4 at 1.)

Plaintiff received monthly invoices from CallSource with each invoice reflecting all of the

charges incurred in that month. (#237 ¶ 27.)  At his deposition, Jones testified:

Q: You receive monthly invoices from CallSource; correct?

A: Yes.

Q: And for each - - each month shows all the charges you incurred during that month;
correct?

A: Yes, it should.

***** 

Q: And if the charges were incurred they'd be on the bill; is that correct?

A: They'd be on this or maybe I missed that bill but yes.

(#237-2, 70: 18-23, 75: 21-24.)  By way of example, in July 2013, Plaintiff used 1006 minutes. (#237

¶ 28; #237 -8.)  Jones was charged his monthly fee of $499 and was billed for 6 extra minutes at a

rate of .099 cents. *Id*.  Plaintiff was charged an additional 0.59 cents for those extra minutes which

is reflected in the July 2013 invoice. *Id*.

Plaintiff's November 2013 invoice from CallSource reflects the charges incurred between

---

[5]

In his statement of undisputed facts, Jones states "Plaintiff pays Call Source approximately $499.00 per month and has 1000 minutes per month and is charged 9.9 cents for calls." (#202 ¶ 4.)  To this extent this purported fact differs from the terms of the actual contract and the Plaintiff's deposition testimony, it is disregarded.  Plaintiff cannot misstate facts in  "an attempt to manufacture an issue of fact in order to survive summary judgment." *Orta-Castro v. Merck, Sharp & Dohme Quimica P.R., Inc*., 447 F.3d 105, 110 (1st Cir. 2006); *Escribano-Reyes v. Prof'l Hepa Certificate Corp*., 817 F.3d 380, 387 (1st Cir. 2016).

November 1, 2013 and November 30, 2013. (#237 ¶ 29; #237-6.)  In November 2013, Plaintiff used

972 minutes of his allotted 1,000 monthly minutes. *Id.*  Plaintiff did not incur any charges for any

additional minutes used that month, and specifically did not incur any per call charge as a result of

the two calls received on November 6, 2013 from Revenue Assistance. *Id.*  According to his

deposition testimony, Jones relies solely on the invoices from CallSource to establish his damages:

> Q: As you sit here today, do you know how much in damages you're seeking from
> Revenue Assistance as a result of their conduct?
>
> A: No, I don't.  I don't know . . .
>                           *****
> Q: So the invoices.  That's what you're saying your damages are?  The invoices?
>
> A: Yeah.

(#237-2, 79: 14-17, 80: 6-8.)

Because Plaintiff did not incur any charges for additional minutes used in November 2013, and he

was not charged on a per call basis for the calls made by Defendant on November 6, 2013, Plaintiff

has suffered no actual damage as a result of the two telephone calls from Revenue Assistance. (#237

¶ 32.)  Jones seeks recovery of $500 in statutory damages for each of the two calls made by

Defendant. (#237 ¶ 33; #237-9, Int. 8.)

> At his deposition, Plaintiff testified as follows:
>
> Q: You had indicated that you've been unemployed since 2012; is that accurate to
> say?
>
> A: Yes, for the most part as far as – yeah, I have been unemployed.
>
> Q: Did you have - - between 2012 and 2015, despite not being formally employed,
> did you have any other source of income during these times?
>
> A: Actually, I've just been - - had a few lawsuits.

Q: So lawsuits which you've received settlements from?

A: Yes.

*****

Q: Do you know if they are FDCPA suits?

A: Of course, yes.

Q: TCPA suits?

A. Yes, some TCPA.

Q: Claims under 93A?

A.  Yeah.  A few; yeah.

*****

Q. So other than settlements from lawsuits, you haven't had any other source of income between 2012 and 2015?

A. Correct.  2012, yes; December 2012.

(#237-2, 35: 14-24, 36: 1, 8-14, 22-24, 37: 1.)

### III. <u>STANDARD OF REVIEW</u>.

The purpose of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Tobin v. Federal Express Corp.*, 775 F.3d 448, 450 (1st Cir. 2014) (internal quotations marks and citation omitted).  The applicable rule mandates that "a court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  Summary judgment would be inappropriate "if the record is sufficiently open-ended to permit a rational fact finder to resolve a material factual dispute in favor of either side." *Pierce v. Cotuit Fire District*, 741 F.3d 295, 301 (1st Cir. 2014).

The moving party bears the initial burden of asserting the absence of a genuine issue of

material fact and "support[ing] that assertion by affidavits, admissions, or other materials of evidentiary quality." *Mulvihill v. Top-Flite Golf Co.*, 335 F.3d 15, 19 (1st Cir. 2003) (citations omitted).  A genuine issue of fact exists where a fact finder could find in favor of the non-moving party, "while material facts are those whose existence or nonexistence has the potential to change the outcome of the suit." *Green Mountain Realty Corp. v. Leonard*, 750 F.3d 30, 38 (1st Cir. 2014) (internal quotations marks and citation omitted).  "Once the moving party avers the absence of genuine issues of material fact, the non-movant must show that a factual dispute does exist, but summary judgment cannot be defeated by relying on improbable inferences, conclusory allegations, or rank speculation." *Fontánez-Núñez v. Janssen Ortho LLC*, 447 F.3d 50, 54-55 (1st Cir. 2006) (internal quotation marks and citation omitted).

In determining whether summary judgment is proper, evidence is considered "in the light most favorable to the non-moving party" and "all reasonable inferences" are drawn in his favor. *Ahmed v. Johnson*, 752 F.3d 490, 495 (1st Cir. 2014).  Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (further internal quotation marks omitted)).

## IV. DISCUSSION.

The evidence here is clear and undisputed.  Plaintiff's deposition testimony and the

10

November 2013 CallSource invoice establish that Jones used less than his allotted 1,000 minutes that month and, as a consequence, he was not charged for any extra minutes. Further, Plaintiff was not charged by CallSource on a per call basis. Because Jones cannot show that he was charged on a per call basis or that he was charged in any way at all for the two November calls from Revenue Assistance over and above his contractual $499 monthly charge, he cannot prove the claim alleged for violation of 47 U.S.C. 227(b)(1)(A)(iii). *See Karle v. Sw. Credit Sys.*, No. CV 14-30058-MGM, 2015 WL 5025449, at *6 (D. Mass. June 22, 2015), *report and recommendation adopted sub nom. Karle v. Sw. Credit Sys., Ne. Utilities Serv. Co.*, No. 14-30058-MGM, 2015 WL 5031966 (D. Mass. Aug. 25, 2015). In the absence of any genuine issue of material fact, Revenue Assistance is entitled to the entry of summary judgment in its favor on Count II.

Defendant further argues that, because Jones did not incur a per call charge (or any charge) as a result of Revenue Assistant's two telephone calls in November of 2013, Plaintiff has not suffered any economic injury consequent to Defendant's conduct. According to Revenue Assistance, without any economic injury, Jones has not suffered an injury-in-fact and so lacks standing to assert a claim for violation of the TCPA. *Spokeo, Inc. v. Robins*, - U.S. -, 136 S. Ct. 1540, 1547 (2016) ("Our cases have established that the irreducible constitutional minimum of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements.") (internal citations and quotation marks omitted); *Stoops v. Wells Fargo Bank, N.A.*, No. CV 3:15-83, 2016 WL 3566266, at *11-12 (W.D. Pa. June 24, 2016).

"To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a

legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 1548 (internal citation and quotation marks omitted).  As explained by the Supreme Court, "[f]or an injury to be particularized, it must affect the plaintiff in a personal and individual way. . . . Particularization is necessary to establish injury in fact, but it is not sufficient. An injury in fact must also be concrete. . . . A concrete injury must be de facto; that is, it must actually exist. When we have used the adjective concrete, we have meant to convey the usual meaning of the term - real, and not abstract." *Id.* (internal citation and quotation marks omitted). Furthermore, "Article III standing requires a concrete injury even in the context of a statutory violation. For that reason, [Plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id*. at 1549 (internal citation and quotation marks omitted).

While Jones has not suffered an economic injury-in-fact, on the record before the Court, it is unclear whether Plaintiff can demonstrate a violation of his privacy interests as an injury-in-fact. *See Stoops*, 2016 WL 3566266, at *9 (citing cases).  Jones avers that he subscribed to the telephone number, 978-425-6336, and has had it registered on the Federal Trade Commission Do Not Call List since on or about 2003. (#201 ¶ 2; #201-1, Exh. 8 ¶ 3[6].)  Defendant does not dispute that Plaintiff subscribed to the telephone number, but does dispute the evidence proffered to show that the number is registered on the Do Not Call list. ((#237 ¶ 2.)  Plaintiff claims that he owns the telephone number (#201-1, Exh. 8 ¶ 3), while Revenue Assistance disputes that ownership, arguing the telephone

---

[6]

Jones has filed an affidavit providing specific facts that support an injury-in-fact.  *See*, e.g., *Conservation Law Foundation, Inc. v. U.S. E.P.A.*, 964 F. Supp.2d 175, 181-182 (D. Mass. 2013).

number is associated with an entity called Eccentric Entertainment, an escort service. (#237 ¶ 3[7].) Jones asserts that he never gave permission to Revenue Assistance to call his telephone number (#201 ¶ 5); Defendant contends that the number is associated with an escort service and so is not a residential line. (#237 ¶ 5.)  Although Defendant argues that Plaintiff's only source of income since 2012 has been lawsuits, unlike the plaintiff in *Stoops*, Jones has not admitted that he "files TCPA actions as a business." *Stoops*, 2016 WL 3566266, at *9.[8]  In short, genuine issues of material fact exist as to whether Jones' privacy rights were violated by the November telephone calls such that he suffered an injury-in-fact.

## V. RECOMMENDATION.

For the reasons stated, I RECOMMEND that Plaintiff's Motion for Partial Summary Judgment (#201) be DENIED.  I FURTHER RECOMMEND that Revenue Assistance's Cross-Motion for Summary Judgment (#235) be GRANTED, and that judgment enter in favor of Revenue Assistance on Count II of the first amended complaint.

## VI. REVIEW BY DISTRICT JUDGE.

The parties are hereby advised that any party who objects to this recommendation must file specific written objections with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.   The objections must specifically identify the portion of the

---

[7]

Because it appears that the date on the Eccentric Entertainment Yellow Pages entry submitted by Defendant (#237-1) is 2016,  it is unknown whether the telephone number was associated with the escort service during November 2013.

[8]

At her deposition, Stoops answered "Yes, I am" to the question "So you are bringing these [TCPA] lawsuits as a business?" *Stoops*, 2016 WL 3566266, at *10.

recommendation to which objections are made and state the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed. R. Civ. P., shall preclude further appellate review.  *See Keating v. Secretary of Health & Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1st  Cir. 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

August 31, 2016                              /s/ M. Page Kelley
                                             M. Page Kelley
                                             United States Magistrate Judge